IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LONNIE J. RYAN, JR.,

                Plaintiff,

v.                                                                                  Case No. 5:24-cv-03154-DDC-ADM

STATE OF KANSAS, DAVID DAVIES, LAURA
HOWARD, DR. CHRISTINE MOHR, TODD
MANTEL, SETH OSBORN, PROGRESS REVIEW
PANEL, GARY HOUSE, HONORABLE ROBERT L.
GOSSARD, JANE & JOHN DOES,

                Defendants.

**Motion to Dismiss and Brief in Support**

Pursuant to Fed. R. Civ. P 12(b)(6), Defendants David Davies, Laura Howard, Christine Mohr, Todd Mantel, and Robert Gossard move to dismiss Plaintiff Ryan's Complaint because he fails to state a claim for which relief may be provided.

**Summary of the Case**

Plaintiff Lonnie Ryan, Jr. is a sexually violent predator, committed to the State's custody for care and treatment under Kansas' Sexually Violent Predator's Act ("KSVPA"), K.S.A. 59-29a01, *et seq*. Following Ryan's failure to comply with requirements for conditional release, Defendant Judge Robert Gossard ordered Ryan back to secure confinement upon motion filed by Defendant Assistant Attorney General David Davies. Defendants Howard, Mohr and Mantel are KDADS officials who complied with the Order and continue to treat Ryan at a secure facility. Ryan contends the statutory procedures implemented by all Defendants are constitutionally infirm and thus violate his rights under the Fourteenth Amendment's due process, freedom, and equal protection guarantees. Ryan's claims against these Defendants should be dismissed.

## Statement of Facts

Defendants accept as true those facts purported in Ryan's Complain (Doc. 1) only for purposes of the motion to dismiss, except those facts contradicted by public record.[1] Should the Complaint survive this motion, Defendants reserve the right to dispute all alleged facts.

1. K.S.A. 59-29a08 details the process for an individual committed under the Sexually Violent Predator's Act (KSVPA) to advance from secure confinement to transitional release, upon a finding "that the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release." *See generally*, Doc. 2, pp 2, 4-5.

2. K.S.A. 59-29a18 details the process for an individual committed under the KSVPA to advance from transitional release to conditional release, upon a finding "that the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in conditional release." *See generally*, Doc. 2, pp 2, 4-5.

3. K.S.A. 59-29a19 details the process for an individual committed under the KSVPA to advance from conditional release to final release. *See generally*, Doc. 2.

4. In 2002, Ryan was committed to the care and custody of KDADS under K.S.A. 59-29a05. Doc. 1, p. 4.

5. In October 2018, KDADS notified the Court and Ryan, that clinicians concluded his mental abnormality or personality disorder had not so changed that it would be safe to place him in transitional release following an annual examination of his mental condition. Exhibit A,

---

[1] "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (internal citation omitted). Additionally, "[t]he court may take judicial notice of state court documents." *Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1119 (D. Kan. 2018). The Court can consider these court filings because they are indisputably authentic, they are implicated by the Complaint and are central to Plaintiff's allegations. *See Cuervo v. Sorenson*, 112 F. 4th 1307, 1312 (10th Cir. 2024).

Oct 2018 Annual Notice

      6.      Ryan did not challenge this finding. Exhibit B, Register of Actions, 2021-PR-0064, p. 10, noting no challenge between 2018 and 2019 annual filings.

      7.      In October 2019, the Progress Review Panel approved Ryan to file an application for Transitional Release under K.S.A. 59-29a08, but noted he was not completely free of risk due to the nature of his mental abnormalities and personality disorder. Exhibit C, Jan. 2020 Response.

      8.      On July 13, 2020, Defendant Judge Gossard ordered Ryan to transitional release, conditioned on Ryan's compliance with the Transitional Release Agreement. Exhibit D, July 2020 Order. The Order did not include a finding that Ryan was safe to be released. *Id*.

      9.      Ryan initialed and signed the Conditions of Transitional Release Agreement. Exhibit D, July 2020 Order.

      10.      On December 8, 2021, Judge Gossard found beyond a reasonable doubt Ryan was appropriate for Conditional Release, subject to Ryan's compliance with the Conditional Release Treatment Plan. Exhibit E, Dec. 2021 Order. The Order included no finding that Ryan was safe to be released. *Id*.

      11.      Ryan signed and initialed his understanding of the Conditional Release Treatment Plan's requirements. Exhibit F, CR Agreement.

      12.      On April 25, 2024, Judge Gossard ordered Ryan temporarily returned to secure confinement at Larned State Hospital due to Ryan's alleged violations of the Conditional Release Treatment Plan. Exhibit G, Apr. 2024 Order.

      13.      On May 30, 2024, Ryan testified at a noticed hearing held pursuant to K.S.A. 59-29a19(d). Ryan was represented by counsel at this hearing. Ryan stipulated to violating the Conditional Release Treatment Plan during this hearing. Exhibit H, June 2024 Order.

14. Judge Gossard found Ryan's admitted violations indicated the absence of skills needed to be safe in the community and listed factors indicating his high degree of risk posed to the community. Exhibit H, June 2024 Order.

15. As a result of these findings, Judge Gossard ordered Ryan removed from Conditional Release and returned to secure confinement at Larned State Hospital. Exhibit H, June 2024 Order.

16. At no time did a district court judge order Ryan to Final Release, pursuant to K.S.A. 59-29a19(e), nor did a Court at any time find Ryan was safe to be released.

17. On October 9, 2024, this Court dismissed the State of Kansas, the Progress Review Board, and Gary House as defendants. (Doc. 9)

## Standard of Review

The standard for evaluating a motion under Fed. R. Civ. P. 12(b)(6) is well-settled. The Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The pleading standard arising from the decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal* require that a complaint plead facts sufficient to show that the claims have substantive plausibility. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. *Iqbal,* 556 U.S. at 679–80; *Twombly*, 550 U.S. at 555. In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

A complaint must contain "a short and plain statement … showing that the pleader is entitled to relief" from each defendant. Fed. R. Civ. P. 8(a)(2). Although factual allegations in a

complaint are accepted as true and viewed in the light most favorable to the non-moving party, the court will dismiss a case when it appears the plaintiff can "prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (internal citations omitted). Moreover, a court is not required to adopt a plaintiff's version of the facts where that version is "blatantly contradicted by the record." *See Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir. 2009).

For claims under 42 U.S.C. § 1983 involving multiple government entities and actors, fair notice under Rule 8(a)(2), makes it "particularly important" for the pleading to "make clear exactly who is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

> [T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Id*. Further, Ryan's complaint, as a pro se litigant, must be construed generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). But a court is not permitted to construct legal theories on his behalf, or assume facts not plead. *See id*.; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**Argument and Authorities**

Ryan is not entitled to relief against these Defendants under the facts alleged and shown by the public record. Ryan's claims are premised on inaccurate conclusions. Further, the complaint does not allege the named Defendants failed to follow the law or denied him a right afforded under

the KSVPA. Further, Defendants are immune from Ryan's attacks under an assortment of reasons. Ryan's complaint should be dismissed.

I. **Ryan's facts are incorrect.**

As an initial matter, the complaint cannot withstand dismissal because Ryan's requests for relief are based on two factually unsupported (i.e., false) conclusions: (1) that his return to Larned State Hospital was punishment for a rule violation, and (2) that a court had found he no longer presented a danger. *See* Doc. 1, 7-8, Doc. 2. The undisputed record from Ryan's underlying civil case shows these premises to be false. While normally all facts contained in the complaint are assumed to be true at the motion to dismiss stage, this court can consider facts that are a matter of public record as well as state court documents. *See Van Woudenberg v. Gibson*, 211 F.3d at 568; *Columbian Fin. Corp.*, 314 F. Supp. 3d at 1119. Ryan's "version of the facts must find support in the record." *See Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quotations omitted). When the "version of events is 'so utterly discredited by the record that no reasonable jury could have believed him'" dismissal is appropriate. *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020). Without the false conclusions to support Ryan's assertions, the complaint collapses.

    A. **Ryan's return to secure confinement was not punitive and therefore did not require due process.**

Ryan seeks declaration that his return to secure confinement was unconstitutional under a theory that a resulting consequence following a rule violation is synonymous with punishment. Doc. 1, p. 7, Doc. 2. As an initial matter, no level of commitment under the KSPVA is punitive. *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) ("involuntary confinement pursuant to the [KSVPA] is not punitive.") Additionally, Ryan's uncontested actions were found to indicate his need for additional, more supervised treatment. *See* SOF 14. This determination is well within the State's authority. *Hendricks*, 521 U.S. at 372 (J. Kennedy, concurring), *citing Addington v. Texas,*

441 U.S. 418, 426–427 (1979). ("As all Members of the Court seem to agree, then, the power of the State to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing, and serious danger to society is well established.").

Ryan's commitment is not based solely on a finding of a mental abnormality or personality disorder; his commitment is justified because his illness requires treatment to prevent repeat acts of sexual violence. *See* K.S.A. 59-29a01. He was determined by a court of law to be "extremely dangerous" and requires a different commitment process than that used for less threatening mental ill persons. *Id*; SOF 4. To date, that determination has not changed. SOF 7, 8, 10, 14, 16.

A plaintiff bears the burden of framing a complaint with enough factual matter to suggest entitlement to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. *Twombly*, 550 U.S. at 556. Ryan's mistaken inference that his increased level of care and treatment represented punishment for failing to adhere to the requirements of Conditional Release is nothing more than an erroneous conclusion.

### B. At no time has Ryan been found safe and ordered to final release.

To constitute a protected liberty or property interest for Fourteenth Amendment purposes, an individual must have a legitimate claim of entitlement to a verifiable liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70 (1972). Here, Ryan is not entitled to his unbridled freedom unless he is considered "safe" and ordered to final release. K.S.A. 59-29a19(e). As made apparent by the record, that has not occurred. SOF 16. His assertions to the contrary may be disregarded by the Court, even at this stage. *See Emmett v. Armstrong*, 973 at 1131. Despite making progress, he remains "committed to the custody of the secretary for aging and disability services for control, care and treatment until such time as [his] mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 59-29a07(a).

A plaintiff can prove a due process violation only by showing denial of a specific

procedural protection to which they were entitled. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). This complaint does not include a deprivation of a process that Ryan was otherwise entitled to. Upon his initial commitment, Ryan had notice of his violations and enjoyed an adversarial process. SOF 4. Likewise, in 2023, Ryan had notice of his violations, enjoyed an adversarial process, and testified in his own defense. SOF 13. Further, Ryan continues to have access to multiple avenues to seek progression to release under Kansas law, including an annual review, and a process to request review outside of the annual process. K.S.A. 59-29a11. The complaint does not allege otherwise.

The purpose of Ryan's commitment is for care and treatment. *See* K.S.A. 59-29a01. Commitment under the KSVPA is not for a prescribed time like a prison sentence. *Contra* Doc. 2, 3; *see also*, *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009) (holding that individuals who are civilly committed are not "prisoners" within the meaning of the Prison Litigation Reform Act). Individuals committed under the KSVPA will remain committed until a court is convinced beyond a reasonable doubt that the person's mental abnormality or personality disorder has so changed that the person is not likely to repeat acts of sexual violence. K.S.A. 59-29a19(e). Because Ryan's status as a sex offender is not a suspect class required for an equal protection analysis, he bears the burden to allege how his return to Larned was not reasonably related to the state's legitimate purpose of confining him for care and treatment. *See Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir. 1992). He makes no such argument.

## II. Defendants enjoy various immunities from Ryan's claims.

### A. Defendant David Davies is immune under prosecutorial immunity.

As the Assistant Attorney General who represented the State of Kansas in the actions resulting in Ryan's return to secure confinement, Defendant Davies is immune from Ryan's claims resulting from those proceedings. "Absolute prosecutorial immunity is a complete bar to a suit for

damages under 42 U.S.C. § 1983." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty., Utah v. Chilcoat*, 143 S. Ct. 1748, (2023), quoting *Mink v. Suthers*, 482 F.3d 1244, 1255 (10th Cir. 2007). "The doctrine of absolute immunity, however, is not without limits." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). But "[w]here providing only qualified immunity would fail to ensure the unhindered performance of a public official's duties essential to the proper functioning of that process, a grant of absolute immunity is proper." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (internal citation omitted).

Although the procedures at issue here occurred by way of a civil commitment setting, Davies's duties are akin to those of a criminal prosecutor as an advocate for the State of Kansas. The KSVPA assigns the Kansas Attorney General to file a petition for commitment and provide "sufficient facts" to support the commitment. K.S.A. 59-29a04(a). These duties are consistent with the responsibilities charged to the office for prosecuting other matters, both civil and criminal. K.S.A. 75-702(a) ("The attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense.").

When determining the application of immunity, the Tenth Circuit follows a "functional approach" and reviews "the nature of the function performed, not the identity of the actor who performed it." *Chilcoat*, 41 F.4th at 1208 (internal citation omitted). Absolute immunity attaches to actions of "initiating and presenting the government's case," as "the role of an advocate." *Id*. at 1209, quoting *Mink*, 482 F.3d at 1261. Davies's 1) decision to enforce Ryan's conditional release requirements, 2) evaluation of the evidence, and 3) assessment of what evidence to present to the court, are all functions protected by absolute immunity. *See id*., citing *Nielander v. Bd. of Cnty.*

*Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).

Moreover, this circuit recognizes the application of absolute immunity to government attorneys in a civil proceeding. *See e.g.*, *Benavidez v. Howard*, 931 F.3d at 1231 ("qualifying the civil immunity of the city attorneys in their roles as advocates for the city would disserve the broader public interest.") (internal quotation omitted). Thus, Davies's conduct in petitioning the court for Ryan's return to secure confinement is protected by absolute immunity. *See Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) (holding "state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings" pursuant to statutory obligation are "absolutely immune from suit under § 1983 concerning activities 'intimately associated with the judicial ... process.'"). Even overlooking the vagueness of the allegations Ryan launches against David Davies, Defendant Davies should be dismissed as a Defendant in this matter.

      **B.**     **Judge Robert L. Gossard is entitled to absolute judicial immunity.**

Defendant Hon. Robert Gossard is the judge who ordered Ryan's transitional release, ordered Ryan's conditional release, and ultimately ordered Ryan back to the secure care facility after finding Ryan's admitted conduct indicated he posed a high degree of risk to the community. SOF 7, 9. 14. Defendant Gossard is immune under the judicial immunity doctrine. Judges are immune from suits for actions taken within their judicial role, including suits brought under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967). Only two exceptions exist: (1) "actions not taken in the judge's judicial capacity" and (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (internal citations omitted). Ryan does not allege exception here, and the official record confirms Defendant Gossard acted in his official judicial capacity while exercising appropriate jurisdiction.

The scope of Defendant Gossard's actions lamented by Ryan are wholly judicial in nature.

Doc. 1, pp. 3, 5, and 6. "[W]hether an act by a judge is a judicial one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 12, (cleaned up). All alleged actions conducted by Defendant Gossard were in his role as the District Court Judge. Doc. 1, pp. 3, 5, and 6. Even if Judge Gossard ruled "in error" or "in excess of ... authority" or if he was motivated by "malice or corruption," his actions remain immune from suit. *Mireles*, 502 U.S. at 12–13. All claims against Judge Gossard must be dismissed.

      **C.**    **The remaining Defendants are immune under qualified immunity.**

Finally, Ryan names Laura Howard, Christine Mohr, and Todd Mantel as defendants acting under the color of state law. Doc. 1, p. 2. Actions taken by these Defendants were in their official capacity as employees or officials of KDADS and are protected by qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Singh v. Cordle*, 936 F.3d 1022, 1033 (10th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that (1) the defendant violated his constitutional rights and (2) that the right was clearly established." *Id*. (internal citations omitted, numbers added).

As to the first prong, these Defendants did not violate the Constitution by enforcing the KSVPA statute, because the statute is not facially unconstitutional. *See Kansas v. Hendricks,* 521 U.S. 346, 356–60 (1997) (holding that, because the statute narrows the class of persons eligible for confinement, it is not facially unconstitutional).

Nor is the KSVPA unconstitutional as applied to Ryan, because he received the process he is due, and his return to a higher level of care and treatment was not punitive. Supra § I.A. Ryan's

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *See Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991).

These Defendants acted according to the Court's Order. This complaint lacks facts to suggest "wherein defendants deviated from professional judgment and standards to punish plaintiff," rather to ensure his care and treatment. *See Sawyer v. Howard*, No. 19-3171-SAC, 2019 WL 6217910, at *3 (D. Kan. Nov. 21, 2019), *aff'd*, 813 Fed Appx. 345 (10th Cir. 2020) (internal citations omitted). The Court need not accept Ryan's allegations, which state only legal conclusions. *See Hall v. Bellmon*, 935 F.2d at 1110.

Regarding the second prong, a public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Construed liberally, the conduct lamented here is these Defendants' actions to enforce the conditions ordered in the Conditional Release Treatment Plan and return Ryan to secure confinement in accordance with Judge Gossard's order. SOF 8, 10; *see* Doc. 1, p. 2. These actions did not violate a clearly established right: a right to violate conditions of release is not clearly established, nor is the right to remain in Conditional Release in violation of a court-issued Order. These Defendants did not violate Ryan's well-established constitutional rights by enforcing the release agreement and executing the Order. *Contra* Doc. 1, p. 2.

There are no facts to suggest how Howard, Mohr and/or Mantel would have known that following the statutory process set forth in K.S.A. 59-29a08, K.S.A. 59-29a18 and K.S.A. 59-29a19 violated Ryan's rights. Even if the KSVPA is held unconstitutional at a future point in time, these Defendants acted reasonably in enforcing its current provisions and are not liable for Ryan's

alleged deprivations. *See Harlow*, 457 U.S. at 818. The protection afforded is to Howard, Mohr and Mantel here is "immunity from suit rather than a mere defense to liability." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A claim against these defendants in their official capacity fails.

Even under a broad reading that construes Ryan's assertions against Howard, Mohr and/or Mantel are in their personal capacity, the complaint falls short. To establish personal liability in a § 1983 action, a plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (other citations omitted). Again, the complaint does not adequately allege a deprivation. Additionally, the complaint must be "clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Further, "a plaintiff must show personal involvement or participation in the incident. Supervisor status alone is insufficient to support liability. [Citations omitted.]" *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). No facts explain how Howard, Mohr and/or Mantel were personally involved in Ryan's activity.

For the plaintiff's claims to survive a motion to dismiss, he must allege "personal participation in the specific constitutional violation complained of," because § 1983 imposes "liability for a defendant's own individual actions." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). "Defendants are only liable under § 1983 for their deliberate—not negligent—deprivation of constitutional rights." *Woodward v. Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992). Here, Howard, Mohr and Mantel are mentioned only generally in the initial pages. Doc. 1, pp. 2. The Complaint lists no specifics as to the actions taken by any of these Defendants that lead to the alleged violations. "[T]he pleading standard [in] Rule 8 announces [that a complaint] does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555)).

Ryan does not state any facts to establish if or how Howard, Mohr and/or Mantel were personally involved in his claimed deprivations. *See* Doc. 1, p. 2. Ryan appears to allege these Defendants deprived him by following the Court's orders, pursuant to state statute, to care for and treat him. But he fails to sufficiently allege how Howard, Mohr and/or Mantel *caused* his alleged deprivation. For these reasons, these Defendants should be dismissed.

### III.  The Complaint lacks details as to the violative actions resulting in deprivation.

In addition to citing false information, the Complaint is void of specific facts to support an equal protection allegation. Absent alleging membership in a specific class or group, Ryan must contend he was treated differently from similarly situated individuals. *See e.g., Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016) (an equal protection claim requires a plaintiff to show he was treated differently from others similarly situated and there is no rational basis for the difference in treatment). A plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that specific defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. There are no such facts pled here.

This complaint "is inadequate both for failure to provide fair notice and because, even if we take all well-pleaded facts in the complaint as true, the plaintiffs have failed to present a plausible right to relief." *Robbins*, 519 F.3d at 1249-50. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the

defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious*, 492 F.3d at 1163. A basic level of specificity is necessary to "permit[] the defendant[s] sufficient notice to begin preparing [their] defense and the court sufficient clarity to adjudicate the merits." *Id.*

Ryan fails his burden to sufficiently plead a clearly established right, established at the time of the challenged conduct, was violated by any of these Defendants in a specific way. Without additional details as to specific actions of named Defendants, and how Ryan's treatment differed from others', his claims do not survive dismissal.

## Conclusion

Because the record does not provide sufficient allegations to support an avenue for relief and Defendants are entitled to immunity, dismissal of Ryan's Complaint with prejudice is warranted.

Respectfully submitted,

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cmoe@fpsslaw.com

<u>s/Crystal B. Moe</u>
David R. Cooper                    #16690
Crystal B. Moe                     #29168
*Attorneys for Defendants*

## Certificate of Service

I hereby certify that I electronically filed the foregoing on February 21, 2025, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

I further certify that on the same date, a copy was placed in the United States mail, postage prepaid, addressed to:

Lonnie J. Ryan, Jr.
1301 K264 Highway
Larned, Kansas 67550
**Plaintiff** *Pro Se*

                                             **s/Crystal B. Moe**